IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHERI EVELYN AVILA,

    Plaintiff,

v.   Civ. No. 19cv524 SCY

ANDREW SAUL, Commissioner of Social
Security,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record, Doc. 15, filed September 13, 2019, in support of Plaintiff Cheri Evelyn Avila's Complaint, Doc. 1, seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying her claim for disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434. On November 12, 2019, Ms. Avila filed her Motion To Reverse And Remand To Agency For Rehearing, With Supporting Memorandum. Doc. 18. The Commissioner filed a response on February 12, 2020, Doc. 21, and Ms. Avila did not file a reply, Doc. 22. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019 and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 3, 10, 11.

## BACKGROUND AND PROCEDURAL RECORD

Claimant Cheri Evelyn Avila suffers from the following severe impairments: spinal scoliosis; lumbar multilevel degenerative disc disease; migraine headaches; major depressive disorder; generalized anxiety disorder; and posttraumatic stress disorder. Administrative Record ("AR") at 20. Ms. Avila completed one year of college and has past relevant work as a home attendant. AR 29, 234.

On January 22, 2016, Ms. Avila filed an application for benefits under Titles II and XVI, alleging disability beginning January 4, 2016. AR 17, 94-95. Her applications were initially denied on June 29, 2016, and upon reconsideration on January 9, 2017. AR 94-95, 128-29. Ms. Avila requested a hearing on March 9, 2017. AR 146. Administrative Law Judge ("ALJ") Eric Weiss conducted a hearing in Albuquerque on February 26, 2018. AR 36-67. Ms. Avila appeared with legal representation and testified. *Id.* The ALJ also took testimony from Vocational Expert ("VE") Thomas Greiner. AR 36, 188. On August 6, 2018, the ALJ issued an unfavorable decision. AR 14-35. On April 6, 2019, the Appeals Council denied Ms. Avila's request for review. AR 1-4. The ALJ's decision is the final decision of the Commissioner for purposes of judicial review. On June 7, 2019, Ms. Avila filed a timely appeal with this Court. Doc. 1. The Court reserves discussion of the medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

A.   Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability

benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

3

>Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.   Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Ms. Avila argues that the Court should remand because: (1) the RFC does not adequately consider the severe impairment of migraines, Doc. 18 at 5-8; (2) the ALJ erred by rejecting the opinion of treating physician Valerie Carrejo, M.D., *id.* at 9-12; (3) the ALJ failed to adopt part of the state agency non-examining consultants' opinions without explanation, *id.* at 12-13; and (4) the ALJ failed to properly consider the subjective symptom evidence, *id.* at 13-14. The Court rejects Ms. Avila's arguments and affirms the ALJ's decision.

### I. The ALJ Adequately Explained The Limitations In The RFC Related To Ms. Avila's Headaches.

Ms. Avila argues that, despite finding her impairment of migraines to be severe at step two, the ALJ failed to adequately account for that impairment at step four. Doc. 18 at 5-6. At step four, the ALJ explained that, "given her complaints of migraine headaches," the RFC limits Ms. Avila "to occasional exposure to unprotected heights and dangerous moving machinery." AR 28. Ms. Avila argues that there is no logical connection between her complaints of headaches and this limitation, and the ALJ failed to provide an adequate explanation for the RFC. Doc. 18 at 6, 8; *see* SSR 96-8P, 1996 WL 374184, at *7 (the RFC must "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work").

The ALJ acknowledged Ms. Avila's hearing testimony that she is confined to her room to sleep three days a week because of headaches, but found that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 25. With respect to the evidence regarding headaches, the ALJ discussed treatment notes showing a complaint of "migraine headaches" in early July 2016. AR 26 (citing AR 659-61). Despite medication, Ms. Avila reported that the frequency of headaches had not subsided, but medication provided "temporary relief." *Id.* Her doctor increased her medication dosage and advised her to take various herbal supplements. *Id.* In late July 2016, she was discharged from physical therapy because "[s]he was walking daily on the treadmill and performing her other home exercises with no reported difficulties." *Id.* (citing AR 665-66). In January 2017, she reported her headaches were "under good control." AR 27 (citing AR 725). But in March, she reported increased headaches. *Id.* (citing AR 722). In June, her back pain was improved and she was more concerned about headache pain. *Id.* (citing AR 745-46). Her doctor gave her trigger point injections and she felt

6

immediate headache relief. *Id.* A few days later, she reported to her behavioral health provider that "overall she was feeling better." *Id.* (citing AR 853-57). Her headaches had decreased and she was seeing a chiropractor. *Id.* At a follow-up appointment, she was still reporting her headaches were less frequent. *Id.* (citing AR 849-51).

The ALJ also considered the opinion evidence, including the state agency non-examining consultants at the initial and reconsideration levels. AR 28. At the reconsideration level, Dr. Nisha Singh "found the claimant capable of light work." *Id.* Dr. Singh found Ms. Avila "could frequently stoop, kneel, crouch, and crawl, but she would have no limits on her ability to balance." *Id.* Dr. Singh "also assessed environmental limitations." *Id.* (citing AR 120-21). The ALJ explained:

> I have given significant weight to the opinions of the consultants at the reconsideration level. While I agree the claimant can perform light work, given her complaints generalized pain and persistent lower back pain, I have further accommodated her by limiting her to occasional postural activities, but no climbing ladders, ropes or scaffolds. Given her complaints of migraine headaches, I have further limited her to occasional exposure of unprotected heights and dangerous moving machinery.

*Id.*

In her motion, Ms. Avila highlights various treatment records regarding her headaches that the ALJ did not discuss. Doc. 18 at 7-8. In November 2016, she complained to her treatment provider that her migraines were more bothersome, she was running out of Imitrex early, and she was experiencing photophobia and blurred vision at times. AR 730. Her doctor increased her medication. *Id.* In January 2017, Ms. Avila reported that she had experienced bad migraines at the beginning of the month. AR 725-26. Ms. Avila notes that, although the ALJ acknowledged she complained of "increased headaches" in March 2017, her complaints were more graphic: "daily debilitating headaches" that force her to lay down and anxiety that worsens the cycle of her headaches. AR 721-22. In May 2017, she said she was unable to obtain relief from chronic

7

migraines and her activity was minimal. She was prescribed nortriptyline. AR 843-44. Finally, after her headaches seemed to improve in the summer of 2017, she reported a reoccurrence in November due to decreasing the dose of nortriptyline. AR 711. Given these complaints, she argues that the RFC limitation to "occasional exposure to unprotected heights and dangerous moving machinery does not make sense." Doc. 18 at 8.

The Court disagrees. The ALJ's RFC limitation is clearly explained. The ALJ gave significant weight to the opinion of Dr. Singh, who opined that she can perform light work, but because of her migraines and fibromyalgia, she must avoid hazards such as machinery and heights. AR 121-22. In other words, the ALJ did not invent this limitation; as he explained, he adopted it from Dr. Singh. Finally, he explained why he did not credit Ms. Avila's complaints of headache pains beyond Dr. Singh's limitations: the evidence of record did not entirely support it. He acknowledged many, if not all, of her complaints of headaches that Ms. Avila's motion highlights. But he balanced them against the times Ms. Avila reported improvement in her symptoms and reported that medication was working, as well as her ability to complete physical therapy exercises daily. The Court finds that the narrative satisfies the ALJ's duty to explain the RFC and that the ALJ's decision is supported by substantial evidence.

## II. The ALJ Adequately Evaluated The Opinion Evidence.

### A. The Rule on Medical Opinions

The ALJ is required to evaluate every medical opinion he receives that could have an effect on the RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017,[4] as the

---

[4] For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of

8

present claim is, medical opinions are classified into two different categories: "acceptable medical sources" and "other sources." "Acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298. "Other medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Information from "other sources," both medical and non-medical, are used to "show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. § 416.902); *see* SSR 06-03p, 2006 WL 2329939, at *2.

A unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant). First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2)

---

review. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

9

"consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

> The factors in the regulation are:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331.

### B.   Dr. Carrejo's Opinion

Treating physician Valerie Carrejo, M.D., has treated Ms. Avila at UNM 2014 and prior to that, at First Choice Community Healthcare. AR 895. On January 23, 2018, Dr. Carrejo wrote a letter opining that "Ms. Avila has suffered from chronic pain, chronic mental illness and other medical conditions that have prevented her from working for the past several years." *Id.* "I do not perform disability determinations in my medical practice, but I do support Ms. Avila in her claim based on my long-term medical relationship with her." *Id.* Dr. Carrejo then listed the following "active problems": anxiety, chronic back pain, chronic migraine, constipation, cystourethrocele without mention of uterine prolapse, dizziness, female stress incontinence, fibromyositis, hyperparathyroidism, obstructive sleep apnea syndrome, opioid dependence, posttraumatic stress

10

disorder, reactive airway disease, and tobacco use disorder. AR 895-96. Dr. Carrejo also included a list of active medications. AR 896.

The ALJ gave Dr. Carrejo's opinion "little weight." AR 28. The ALJ explained that Dr. Carrejo's statements "do not give detailed information regarding how her impairments would impact her ability to work and only summarize her subjective complaints, outline her impairments and list her medications. There is no functional analysis or objective findings to support specific limitations." AR 28.

Ms. Avila's only argument for reversal is that the ALJ did not engage in a proper treating physician analysis, neither explicitly considering whether to give the opinion controlling weight at the first step, nor "go[ing] through the factors from 20 C.F.R. §§ 404.1527(c), 416.927(c)" at the second step. Doc. 18 at 11. The Court rejects this argument. The Tenth Circuit has been clear that an ALJ need not "expressly state whether he had given [a treating physician] opinion 'controlling weight.'" *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014). Here, as in *Mays*, the ALJ gave the opinion "little weight," AR 28, which means that he implicitly declined to give the opinion controlling weight. This procedure is not error. *Mays*, 739 F.3d at 575.

Similarly, the ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The ALJ explicitly discussed factor (1)—the length of the treatment relationship—in acknowledging that Dr. Carrejo had a "long-standing treatment history" with Ms. Avila. AR 28. He discussed factor (3)—the degree to which the physician's opinion is supported by relevant evidence—in listing

the various ways in which Dr. Carrejo's opinion lacked any "detailed information" or "objective findings" to support it. *Id.* And finally, to the extent the ALJ gave other reasons, factor (6)—other factors—explicitly permits him to do so.

Ms. Avila does not argue that the ALJ's reasons themselves are neither legitimate nor specific. She does not argue that, much less explain how, they are not supported by substantial evidence. The Court will not make arguments for her. The Court affirms the ALJ's analysis of Dr. Carrejo's opinion.

C. Non-Examining State Agency Consultants

Non-examining agency physicians Scott R. Walker, M.D. on initial review and Joan Joynson, Ph.D. on reconsideration opined that Ms. Avila can "interact appropriately with coworkers; supervisors and the general public on a superficial basis." AR 73, 108-09. The ALJ gave "significant weight" to the mental assessment at the initial and reconsideration levels. AR 28. In the RFC, he determined that Ms. Avila "is able to interact occasionally with supervisors, co-workers and the public." AR 24.

Ms. Avila argues that the ALJ failed to explain why he replaced the agency consultants' opinion that she can interact with others on a "superficial basis" with a limitation for "occasional[]" interaction with others. Doc. 18 at 12-13. She notes that in doing so, he "confused the quality of the ability with the quantity of the ability," without explanation. *Id.* at 13. The Commissioner does not argue that "superficial" is the same as "occasional," but contends that the ALJ identified jobs Ms. Avila can perform that do not require more-than-superficial interaction with others. Doc. 21 at 16-17. Any error, the Commissioner argues, is therefore harmless.

The Commissioner is correct. Appendix B of the Dictionary of Occupational Titles ("DOT") specifies that the fourth, fifth, and sixth digits of the code reflect "relationships to Data, People, and Things, respectively . . . [and] express a job's relationship to Data, People and

Things by identifying the highest appropriate function in each listing shown." *Appendix B – Explanation of Data, People, and Things*, 1991 WL 688701. The "People" category (the fifth digit) has a range from zero to eight, with zero requiring the highest level of human interaction and eight requiring the lowest. *Id.* The DOT specifies that eight corresponds to a worker function of "Taking Instructions – Helping," which is defined as "[a]ttending to the work assignment instructions or orders of supervisor.  (No immediate response required unless clarification of instructions or orders is needed.)  Helping applies to 'non-learning' helpers." *Appendix B*, 1991 WL 688701.

The jobs the ALJ identified Ms. Avila could perform all have a "People" code of eight: marker (DOT code 209.587-034, 1991 WL 671745); photocopy machine operator (DOT code 207.685-014, 1991 WL 671802); and silver wrapper (DOT code 318.687-018, 1991 WL 672757). AR 29-30. Moreover, as the Commissioner points out, each of these job descriptions in the DOT explicitly address the "quality" of the interaction with others: "Taking Instructions-Helping" is "Not Significant." Maker, 1991 WL 671802; Photocopy Machine Operator, 1991 WL 671745; Silver Wrapper, 1991 WL 672757.

The identification of jobs that do not require "significant" interaction with others is consistent with the state agency consultants' opinion that Ms. Avila is capable of "superficial" interaction with others. *See Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016) (a DOT entry that describes the amount of "Taking Instructions" required as "Not Significant" is consistent with "superficial contact with supervisors and co-workers"). Thus, incorporating the state agency consultants' opinion verbatim into the RFC would not have helped Ms. Avila, because she would still have been found capable of performing other significant work in the national economy at step five. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir.

13

2012) (error in failing to explain the weight given to a medical opinion did not prejudice the claimant because giving greater weight to the opinion "would not have helped her").

Moreover, although Ms. Avila's argument that "superficial" relates to quality whereas "significant" arguably relates to quantity may be correct, a person's inability to engage in quality interactions becomes less relevant as the number of interactions in which that person must engage decreases. Here, the ALJ took Ms. Avila's inability to engage in more than superficial interactions into consideration by limiting the number of interactions in which she would need to engage.

### III. The ALJ Adequately Explained His Evaluation Of Ms. Avila's Subjective Symptom Evidence.

Social Security Ruling ("SSR") 16-3p[5] instructs ALJs "to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." 2016 WL 1119029, at *2. An ALJ must explain which of an individual's symptoms he found consistent or inconsistent with the evidence in the claimant's record and how his evaluation of the individual's symptoms led to his conclusions. *Id.* at *8. In evaluating whether a claimant has disabling pain, the reviewing court considers whether the claimant has proffered objective medical evidence of a pain-producing impairment; if so, whether there is a loose nexus between the claimant's subjective allegations of pain and the

---

[5] SSR 16-3p is applicable for decisions made on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186. SSR 16-3p eliminated the use of the term "credibility," in order to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2. The instructions for evaluating subjective allegations in both rulings are the same, so case law interpreting SSR 96-7p remains relevant. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016); *Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017). In light of this change, the Court will use the term "subjective symptom evidence" when discussing past case law that refers to a claimant's "credibility."

impairment; and if so, whether the claimant's pain is in fact disabling, considering both objective and subjective evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). "A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Id.*

The ALJs' assessments of subjective symptom complaints "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). While the Tenth Circuit has "insisted on objectively reasonable explanation over mere intuition," it has "not reduced [subjective symptom] evaluations to formulaic expressions." *Id.* at 909. The courts do not "'require a formalistic factor-by-factor recitation of the evidence.'" *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The ALJ need only "set[] forth the specific evidence he relies on in evaluating the claimant's" subjective symptom evidence. *Id.* "Findings as to [subjective symptom evidence] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

Ms. Avila argues that the ALJ's rejection of her subjective symptom complaints was "vague." Doc. 18 at 14. According to her, "[t]he ALJ only stated the standard, summarized some of the evidence, and made his conclusion." *Id.* at 13. "[H]e did not provide an explanation of how Ms. Avila's symptoms were inconsistent nor did he discuss how his evaluation of her symptoms led to his conclusions." *Id.* "[H]e failed to explain which symptoms he found consistent or inconsistent with the evidence and how his evaluation of the symptoms led to his RFC conclusion." *Id.* at 14. He did "not articulate any findings comparing Ms. Avila's testimony and the medical evidence and instead relie[d] on an assertion that her statements are not entirely

15

consistent." *Id.* "The ALJ failed to make specific comparisons between Ms. Avila's statements and the medical evidence in the decision demonstrating how the two are different." *Id.*

Ms. Avila misunderstands the ALJ's decision. The ALJ did acknowledge her testimony, including her own description of her subjective symptoms. AR 25 (summarizing Ms. Avila's testimony that "scoliosis and degenerative changes in her lumbar spine" cause her "chronic pain"; that she "experiences headache pain about three times per week, which essentially confines her to her room to sleep"; that "she has been depressed all her life"; and that "a typical day" involves "sleeping quite a bit"). In other words, the ALJ acknowledged that Ms. Avila's described symptoms portray someone that would not be able to maintain a job working five days a week. Ms. Avila does not mention any symptom evidence that the ALJ should have, but did not consider.

As detailed above, the ALJ sufficiently explained why he did not credit her complaints of headaches that confine her to her room three times a week, with citations to the record. *Supra*, pp. 6-8. His narrative also addresses evidence related to allegations of chronic pain because of her back[6] and her depression.[7] Ms. Avila does not point to evidence the ALJ should have considered but did not; does not highlight any significantly probative evidence related to her symptoms that the ALJ ignored; and does not support her argument with anything other than

---

[6] *See* AR 26 (discussing visits for pain management with Drs. Duhigg and Dr. Chari; an evaluation with Melissa Merhege, M.D. "for her scoliosis and the resulting back pain"; her ability to complete daily physical therapy "with no reported difficulties"; and "a review of systems" on September 22, 2016 with a "chief complaint" of back pain); AR 27 (discussing pain management with Benson R. Daitz, M.D. in March 2017).

[7] *See* AR 25 (discussing an emergency room note relating to her depression); AR 26 (discussing a visit with psychiatrist Kimothi N. Cain, M.D.; and treatment with Dr. Carrejo for anxiety); AR 27 (discussing behavioral health treatment notes covering the period from May 3, 2017 through November 8, 2017).

generalities. The Court will not make arguments for her. Ms. Avila's only argument—that the ALJ did not explain his decision fully according to SSR 16-3p—is incorrect.

## CONCLUSION

For the reasons stated above, Ms. Avila's Motion To Reverse And Remand To Agency For Rehearing, With Supporting Memorandum, Doc. 18, is **DENIED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**